**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**REBECA RODRIGUEZ,**

          **Plaintiff,**

**-vs-**                                      **Case No. 6:06-cv-1678-Orl-28DAB**

**FLORIDA FIRST FINANCIAL GROUP,
INC., DOES 1 THROUGH 4,**

          **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument and evidentiary hearing on the following motion filed herein:

> **MOTION:** **MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT (Doc. No. 43)**
>
> **FILED:** **November 25, 2008**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

On October 27, 2006, Plaintiff filed her complaint against Florida First Financial Group, Inc. (herein "Defendant") and Does 1 through 4, seeking injunctive relief and damages for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (herein "FDCPA")*,* and the Florida Consumer Collections Practices Act, Fla. Stat. § 559.55, *et seq.* (herein "the State Act") (Doc. No. 1). Plaintiff sought a jury trial. Defendant appeared and answered but subsequently abandoned its defense (Doc. No. 39). The District Judge struck the Answer and Affirmative Defenses

and directed the Clerk to enter a default against Defendant, and the Clerk complied (Doc. Nos. 41, 42). Plaintiff filed the instant motion, voluntarily dismissing the Doe defendants (who were never named or served), withdrawing her request for injunctive relief, and seeking entry of a default money judgment against Defendant. The Court set the matter for evidentiary hearing (Doc. No. 45) and Plaintiff filed a Notice of Withdrawal of Jury Demand (Doc. No. 46). Plaintiff appeared at hearing and testified, and presented additional evidence and argument (Doc. Nos. 47-8), and Plaintiff filed an Amended Affidavit post-hearing, with respect to attorney's fees and costs (Doc. No. 49). Defendant made no appearance at the hearing, and filed no opposition to the motion or evidence submitted. The matter is now ripe for resolution.

## *STANDARDS OF LAW*

The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-plead in the complaint, it is established by the entry of a default. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston National Bank,* 515 F. 2d 1200, 1206 (5th Cir. 1975). If the amount of damages sought are not specified in the complaint, Plaintiff must prove up the unliquidated sums, in a hearing on damages or otherwise. Rule 55(b)(2), Federal Rules of Civil Procedure.

## *FINDINGS OF FACT*

The well-pled allegations of the Complaint and the testimony and evidence produced at the evidentiary hearing and as exhibits to the motion support the following findings of fact. Defendant is a debt collector and Plaintiff is a "consumer," as those terms are defined by the FDCPA and the

State ACT (Complaint ¶¶ 11, 12). Rapid Cash was a "creditor" who contracted with Defendant for the purpose of collecting a consumer debt (Complaint ¶ ¶ 13, 15). In September 2005, Plaintiff borrowed $400 from Rapid Cash to pay household expenses (herein "rebate loan") (Affidavit of Plaintiff, Doc. No. 43-2). In October 2005, Plaintiff obtained a pay day loan from Rapid Cash in the amount of $500. *Id.*

On or about November 3, 2005, an agent of Defendant called Plaintiff and introduced himself as "John Good of Rapid Cash," calling regarding a bad check. John Good began screaming at Plaintiff and demanded to know when she would pay the money and, when Plaintiff responded that she could not make a payment that day, John Good responded by demanding payment "today." Plaintiff responded that she was unable to pay immediately and was told that "You wrote a bad check and it's against the law in Florida and you can go to jail." He repeatedly demanded that she pay that day and she indicated that she was unable to do so. John Good repeatedly asked Plaintiff whether she still lived at her address and when she asked why he wanted to know, he told her, "so I can send a deputy to go have you arrested (or words to that effect)" (Complaint ¶¶ 16-17E). Plaintiff asked John Good to transfer the call to "someone higher than him" and he told her, "You can't get higher than me, I am the President of the company." (Complaint ¶17G). Plaintiff alleges that Defendant knew that the statements that they could have her arrested and charged with a crime were false and deceptive (Complaint ¶19).

Immediately thereafter, John Good repeatedly called Plaintiff, and she refused to speak with him. Plaintiff called the telephone number he had given her[1] and requested to speak to someone higher up than John Good, but was transferred immediately to John Good. When she requested that

---

[1]Which was not the number of Rapid Cash but, rather, was the number of Defendant.

he transfer the call to his superiors, he refused to do so and she terminated the conversation. Soon thereafter, he called Plaintiff approximately 4-5 times in quick succession. (Complaint ¶19-21). "Soon thereafter," Plaintiff's daughter answered the phone and told Good that her mother did not want to speak to him anymore, and Good told Plaintiff's daughter that he was going to have Plaintiff arrested (*Id.* at ¶22) and that there was a warrant out for her arrest (Affidavit - Doc. No. 43-2). Plaintiff testified that she contacted the State Attorney's Office and learned that there was not an outstanding warrant for her arrest but that she suffered a panic attack, fearful that she was to be arrested.

On November 19, 2005, Plaintiff received a letter from Defendant, demanding payment of $2,000 for Rapid Cash. On November 23, 2005, Plaintiff received another letter from Defendant demanding that she pay $797.85 to Defendant. Plaintiff testified that did not understand how those amounts were calculated and did not agree with the calculation.

Plaintiff testified that she was working at that time as a temp and was placed at Starwood Vacations. On December 1, 2005, Plaintiff contacted Defendant from her office at Starwood and spoke to a person identified as Andy Glenn and informed him that she was disputing the two accounts. He told her that "there is no disputing." She disagreed and said she had the right to dispute the accounts and he replied:"You wrote a bad check and it's against the law in the state of Florida, you can go to jail for that" (or words to that effect). When Plaintiff insisted on proof of the amounts demanded, Glenn replied "You have no rights and you broke the law." Plaintiff then requested that Defendant make any further communications in writing and terminated the call (Complaint ¶25A-K). Defendant immediately called Plaintiff on her cell phone and said that he wanted to verify that she worked for Starwood Vacations and that he was "on his way" to Starwood to "have her arrested"

(Complaint ¶26). Immediately thereafter, Plaintiff suffered a panic attack while at work and was extremely fearful that she was going to be arrested that afternoon at her job. She testified that she was able to stay at the office for the rest of the day, went home after work was finished and had another panic attack at home.

Subsequently, Plaintiff received a letter dated December 1, 2005 from Defendant, entitled Notice of Intent to Cease Communications. The letter advised of an intent to "place this legal debt on all appropriate credit bureaus" and that the file was being reviewed for referral to an attorney for immediate action. (Complaint ¶27). Also on December 1, 2005, Plaintiff sent Defendant letters disputing the amount of the debt and "reminded [Defendant] not to report to credit reporting agencies because the debt is disputed." (Complaint ¶ 28). Despite receipt of this notification, Defendant reported the debt to the credit bureaus, but failed to report the debt as disputed, and that situation continues to date (Complaint ¶¶ 28-31, testimony at hearing). Plaintiff has pled that the actions of Defendant were knowing, wilful and malicious (Complaint ¶ 33).

Plaintiff testified that the communications with Defendant caused several panic attacks, which made her jittery, dizzy and anxious and gave her chest pains. She was fearful and confused, and her husband testified that she underwent behavior changes (including lack of interest in sex). The panic attacks were of one to two hours duration and the behavioral changes, which included obsessional behavior and a diminished relationship with her family, lasted for a two week period in the November/December time frame. Plaintiff did not see a doctor about the panic attacks as she had seen doctors "in the past" and was told that she could not tolerate the medication for panic attacks.

### *ANALYSIS AND CONCLUSIONS OF LAW*

Plaintiff alleged that Florida First's actions violated 15 U.S.C. §§ 1692d(5), and 1692e(1), (2), (4), (5), (7), (8), (10), and (14). She also alleges that Florida First violated section 559.72(3), (4), (7), (9),and (15), Florida Statutes. The applicable provisions prohibit false representations and harassment, to wit:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> * * *
> 5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C.A. § 1692d(5).

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
>
> (2) The false representation of--
>
> (A) the character, amount, or legal status of any debt; or
>
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> * * *
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> * * *

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

\* \* \*

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

15 U.S.C.A. § 1692e.

Fla. Stat. § 559.72. Prohibited practices generally

In collecting consumer debts, no person shall:

\* \* \*

(3) Tell a debtor who disputes a consumer debt that she or he or any person employing her or him will disclose to another, orally or in writing, directly or indirectly, information affecting the debtor's reputation for credit worthiness without also informing the debtor that the existence of the dispute will also be disclosed as required by subsection (6);

(4) Communicate or threaten to communicate with a debtor's employer prior to obtaining final judgment against the debtor, unless the debtor gives her or his permission in writing to contact her or his employer or acknowledges in writing the existence of the debt after the debt has been placed for collection, but this shall not prohibit a person from telling the debtor that her or his employer will be contacted if a final judgment is obtained;

\* \* \*

(7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family;

\* \* \*

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist;
> * * *
> (15) Refuse to provide adequate identification of herself or himself or her or his employer or other entity whom she or he represents when requested to do so by a debtor from whom she or he is collecting or attempting to collect a consumer debt.

West's F.S.A. § 559.72.

False or misleading representations under § 1692e are analyzed from the perspective of whether the least sophisticated consumer would be deceived or misled by the debt collector's practices. *Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1175 (11th Cir. 1985). While the Court does not find that these facts establish violations of every subsection cited (the Court does not find that the phone calls were of such frequency as to be harassing, especially when Plaintiff initiated many of the calls), the Court does find that Defendant knowingly misrepresented the identity of its agents (John Good as being an employee of Rapid Cash), falsely threatened to have Plaintiff arrested and that there was a warrant out for her arrest, and made other false representations (including inflating the amount of the debt itself) sufficient to find Defendant had violated both Acts. *See, generally, Montgomery v. Florida First Financial Group, Inc.,* Case No. 6:06-cv-1639-GAP-KRS;, 2008 WL 3540374 (M.D. Fla. 2008) (the companion case to the instant case, finding liability on similar facts). As proof of only one violation is sufficient to support judgment for plaintiff, *Bentley v. Great Lakes Collection Bureau, Inc*., 6 F.3d 60 (2d Cir. 1993), Plaintiff is entitled to judgment in its favor on the claim.

As for damages, Plaintiff seeks statutory damages under both Acts in the amount of $1,000 for each Act; "actual" damages for her emotional pain and suffering in the amount of $5,000; and punitive damages in the amount of $10,000. Plaintiff also seeks attorney's fees and costs.

*Statutory Damages*

The FDCPA allows for the recovery of actual damages, and additional or "statutory" damages beyond actual damages in an amount not exceeding $1,000.00. 15 U.S.C. § 1692k(a)(2)(A). Statutory damages are limited to $1,000.00 per action, not per violation. *Harper v. Better Business Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir.1992). Factors to be considered in fixing the amount of statutory damages include "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which the noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Considering the frequency of the threats for arrest and other misconduct and the fact that this company has a history of related cases against it for similar inappropriate practices, the Court finds an award of $1,000 under the Federal Act to be appropriate.

As for the State Act, Florida's statute also contains a statutory damages provision of up to $1,000.00. Fla. Stat. § 559.77(2). Florida's statute considers the same factors as the FDCPA in determining the amount of damages. For the reasons set forth above, the Court finds an award of $1,000 to be appropriate under the State Act, as well. Thus, the Court recommends an award of statutory damages in the total amount of $2,000.00.

*Actual Damages*

Plaintiff cites several mostly out of circuit cases for the proposition that tens of thousands of dollars in emotional distress damages are properly awarded as actual damages under FDCPA. While the Court accepts the proposition that emotional distress damages are allowable (*see McGrady v. Nissan Motor Acceptance Corporation,* 40 F.Supp.2d 1323, 1337-1338 (M.D. Ala. 1998), an award of $5,000 is not appropriate here. The undisputed testimony shows that Plaintiff suffered three panic attacks (of limited duration), and was distressed, fearful and distracted for a relatively short (two week) period of time. While not *de minimis,* the distress did not result in hospitalizations or doctor

visits, and Plaintiff did not miss work or suffer other lasting effects.[2] On the other hand, it is undisputed that Defendant's actions caused distress, and Plaintiff testified that her credit reports are still inaccurate, supporting a conclusion that some compensation is appropriate. Viewing all of the evidence, the Court therefore finds an award of $1,000.00 in actual damages to be warranted, and recommends same.

*Punitive Damages*

As Judge Spaulding noted in the companion case:

"The Court has discretion to award punitive damages. Fla. Stat. § 559.77(2). Punitive damages may be awarded where there has been a finding of liability even if no actual damages have been proven. *Ault v. Lohr*, 538 So.2d 454, 456 (Fla. 1989). To obtain punitive damages for violation of the CCPA, Montgomery must show that Florida First acted with malicious intent. *Tallahassee Title Co. v. Dean*, 411 So. 2d 204, 205 (Fla. 1st Dist. Ct. App. 1982) (*citing Harris v. Beneficial Fin. Co. of Jacksonville*, 338 So. 2d 196, 200 (Fla. 1976))."Malice . . . imports a wrongful act done to inflict injury or without a reasonable cause or excuse."*Id*. at 205-06.

*Montgomery, supra.*

As noted, Plaintiff pled and (by virtue of the default) Defendant admitted that its actions were willful and malicious. Moreover, the Court finds that the evidence independently establishes same. Plaintiff was told that "you have no rights" and was repeatedly threatened with arrest. Good misrepresented that he was with Rapid Cash and Defendant intentionally placed the debt with the credit bureaus without notifying the agencies that the debt was disputed, despite receiving verbal and written notice from Plaintiff. The record includes (and the Court takes judicial notice of) evidence of eleven lawsuits against Defendant for similar conduct, at least three of which had resulted in judgments prior to the dates of the violations alleged here. In view of the wealth of evidence

---

[2]The *Montgomery* Court, on arguably more egregious facts, found no actual damages were appropriate. *See also Ugrate v. Sunset Const., Inc*., 2008 WL 4723600 (M.D. Fla. 2008) (slip opinion) (no actual damages awarded, even though violation was admitted).

supporting a finding of malicious intent, the Court finds that an award of punitive damages is appropriate here, albeit not in the requested amount. While the conduct was knowing and willful, the enormity of the wrong does not justify the $10,000 sought. An award of $2,500.00 is recommended.

*Attorney's Fees and Expenses*

A successful plaintiff is entitled to an award of reasonable attorneys' fees under the FDCPA. 15 U.S.C. § 1692k(a)(3); *Hollis v. Roberts*, 984 F.2d 1159, 1161 (11th Cir. 1993). Here, Plaintiff's counsel has filed an Amended Declaration in Support of Plaintiff's motion for attorney's fees (Doc. No. 49), in which counsel Donald Petersen seeks $38, 363.50 as attorney's fees to date (109.61 hours at $350 per hour) and $475.75 in expenses (filing fees, service of process fees and the cost of the mediator). As set forth in his Declaration, Plaintiff includes in this amount 24.56 hours of time spent *jointly* on this case and the companion case. Counsel avers that this is one half of the total amount of time expended jointly on the cases. Declaration at Paragraph 20, and Doc. No. 49-2 at 5.

In this circuit, the Court applies the familiar lodestar approach in order to determine a reasonable attorney fee. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim,* 10 F.3d. 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education,* 775 F.2d 1565, 1571 (11th Cir. 1985)

It is presumed that most or all of the following factors are subsumed in the calculation of the lodestar:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other

> employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

*Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988) , (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)) The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama,* 911 F.2d 604, 610 (11th Cir. 1990).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman,* 836 F.2d 1292 at 1303. With respect to rates, an applicant may meet his or her burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman,* 836 F.2d at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 434.

Applied here, the docket reflects that Defendant originally answered this action, raising numerous affirmative defenses, and filed a motion to compel arbitration before it abandoned its defense. Plaintiff thus was engaged in actively litigating the case, appeared at mediation (Defendant did not), filed a motion for partial summary judgment, and prepared for and appeared at the evidentiary hearing held by the undersigned. While the Court finds that certain of the tasks were more administrative in nature (drafting indexes, downloading Interested Persons Order), the overall amount

of time spent is reasonable, considering that the case involved motion practice, evidentiary hearing and a particularly difficult defendant. (*See* Doc. No. 49 at Paragraph 14). As for the reasonableness of the rate, counsel was awarded this rate in the companion case, and the Court finds it appropriate here, as well. It is therefore **respectfully recommended** that the Court award $38,363.50 in fees and $475.75 in expenses.

### *CONCLUSION*

For the foregoing reasons, it is **respectfully recommended** that Plaintiff's Motion for Entry of Final Default Judgment be **GRANTED in part and DENIED in part**. A default judgment should be entered against Florida First Financial Group, Inc. and in favor of Plaintiff in the amount of $5,500.00 for actual, statutory and punitive damages, $38,363.50 in attorney's fees and $475.75 in costs. Should this recommendation be adopted, the Clerk should be directed to enter judgment accordingly and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 12, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy